**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DEBBIE DANIELS, as Parent, Next**                                               **PLAINTIFF**
**Friend, and Natural Guardian of
JOHNSTIN DANIELS, a Minor**

**V.**                         **NO. 4:04-CV-01499 GTE**

**DEBORAH LUTZ, Individually
and as an Employee of
LAKEWOOD MIDDLE SCHOOL,
NORTH LITTLE ROCK SCHOOL DISTRICT**                        **DEFENDANTS**

**MEMORANDUM OPINION AND
ORDER DENYING IN PART AND GRANTING IN PART
SUMMARY JUDGMENT TO THE DEFENDANTS**

Before the Court are two motions for summary judgment, one each filed by each of the Separate Defendants North Little Rock School District ("NLRSD") and Deborah Lutz. Plaintiff has responded to both motions. After reviewing the motion papers, the Court concludes that the motions are denied in part and granted in part. Specifically, Plaintiff's constitutional, tort of outrage, and false imprisonment claims are dismissed as a matter of law. Plaintiff may proceed against both Defendants on her battery claim.

**FACTS WITHOUT MATERIAL CONTROVERSY**

There are two separate Statements of Material Facts in this case, one filed by the .Defendant NLRSD and the other by the Defendant Ms. Lutz in their separate summary judgment motions. Some of the facts contained in Ms. Lutz's statement of material facts are not material

to the present controversy and will be disregarded.[1]  Where facts are disputed, the Court draws all reasonable inferences in favor of Plaintiff at this summary judgment stage.

Plaintiff Debbie Daniels is the mother of Johnstin Daniels, a minor, who is approximately fifteen years of age.  Defendant NLRSD is a local school district established under the laws of the State of Arkansas.  Lakewood Middle School ("Lakewood") is one school or campus within the NLRSD.  Defendant Deborah Lutz, at all relevant times, has been a teacher at Lakewood.

On December 18, 2003, Plaintiff Johnstin Daniels was attending Lakewood Middle School and was a student in Ms. Lutz's geography class.  Near the end of class on that date, Ms. Lutz returned to the classroom from the hallway, where she had been disciplining another student.  She returned to a rowdy and boisterous classroom.  Numerous students were out of their seats.  Ms. Lutz attempted to quiet the room, told everyone to sit down, and stated that she would "write up" anyone who was not in his seat.  Plaintiff Johnstin states that he was in his seat but that he was leaning over to pick up a piece of paper, a pre-test, that had fallen off his desk.  Plaintiff contends that Ms. Lutz, without any warning, stood in front of him and hit him in the side of the head with a manila folder and a book.  The folder slipped across his face and hit his eye.

At the conclusion of the class, Ms. Lutz indicated that she wanted Johnstin to stay after class.  Plaintiff contends that Ms. Lutz grabbed Johnstin by the shirt collar and put her hands on his neck in an effort to forcibly prevent him from leaving the classroom.[2]  Johnstin was able to elude Ms. Lutz's grasp and exit the classroom.

---

[1] For example, Ms. Lutz mentions Johnstin Daniels prior disciplinary record with other teachers, but such does not appear material to the present legal issues.

[2] Ms. Lutz contends that she touched Johnstin lightly but denies that she grabbed him or used force.

Plaintiff's version of the incident is question is corroborated by Michael Hagen, a classmate and friend of Johnstin's who witnessed the incident. Michael Hagen's Affidavit reads:

> My name is Michael Hagen. I was asked about the incident that occurred in the classroom between Johnston and Mrs. Lutz.
>
> What I witnessed was Mrs. Lutz left the classroom and when she came back Johnston was leaning over in his seat getting some material from under his desk, then Mrs. Lutz came over to Johnston and hit him across the front of his head with a book and file folder. Johnston was raising back up at the time and the folder caught him in the eye.
>
> Johnston then started talking loud and saying "you hit me in the eye." Then the bell rang. And when we were about to leave out, the teacher, Mrs. Lutz was trying to hold Johnston down in his seat. Johnston said, "Let me go", and tried to leave. Then Mrs. Lutz grabbed him in the collar of his shirt and tried to keep him in the classroom. Johnston spinned around Mrs. Lutz and got out of the hold Mrs. Lutz had him in.
>
> To me Mrs. Lutz is a good teacher, but sometimes she loses her cool by yelling at us, throwing stuff and pinching some of the students in our class, not all the time, just sometimes.
>
> That's all I know and seen between her and Johnston.

(Affidavit of Michael Hagen, Doc. 29-2).

Johnstin arrived at home upset, crying and complaining about pain in his eye. He told his mother, Debbie Daniels, that Ms. Lutz had hit him on the head with a folder, catching him in the eye with his folder.

Approximately four days after the incident, a physician at Children's Hospital treated Johnstin for a cut on his cornea. The doctor gave Johnstin some drops for his eye and directed him to wear a patch for several days. After being seen several times for eye related problems, Johnstin was eventually fitted for corrective lenses. Johnstin has also continued to have problems with swelling in that eye. According to his mother, a doctor at the ophthalmology

- 3 -

clinic advised that the problem could be permanent.[3] (Ms. Daniels' Deposition, Doc. 29-4, at p. 21). Plaintiff contends that Johnstin Daniels suffered temporary and long-term injury to his left eye.

On or about December 19, 2003, Plaintiff reported the incident to Lakewood supervisory officials. Separate Defendant NLRSD failed to report the incident to the Arkansas Department of Human Services. Plaintiff contends that this failure violated Arkansas law requiring NLRSD to report all instances of child abuse or suspected child abuse. See Arkansas Code Ann. §§ 12-12-503(4)(d)(ii)(g) & 12-12-507. No report of the incident was made until the North Little Rock Police Department reported the matter to DHS approximately two months after the fact.

Plaintiff's Complaint alleges the following legal claims against Defendant Deborah Lutz: (1) violation of Master Daniel's substantive and procedural due process and equal protection rights under the Fourteenth Amendment; (2) retaliation in an effort to silence Johnstin in violation of the First Amendment; (3) common law battery; (4) intentional infliction of emotional distress; (5) false imprisonment; and (6) "other violations of Arkansas law."[4] Plaintiff, in responding to summary judgment indicates that she is withdrawing the second count, alleging retaliation in violation of the First Amendment.

Plaintiff alleges that Ms. Lutz committed the alleged violations while acting in the course and scope of her employment at Lakewood Middle School and therefore that the NLRSD is

---

[3] At trial, such testimony would not suffice to support an award of damages for permanent injury. Rather, the testimony of a qualified medical professional would be required.

[4] To the extent that Plaintiff is referencing the Arkansas Civil Rights Act, since the legal analysis under the state statute mirrors that required for her federal constitutional claims, the disposition of those claims is also dispositive of her claim of "other violations of Arkansas law." To the extent that Plaintiff intends to reference some other provision of Arkansas law, the allegation is too vague to provide proper notice of a claim.

liable for the state law torts committed by Ms. Lutz under the theory of respondeat superior. As Plaintiff makes clear in its summary judgment response, she does not contend that the school district is liable for any of the alleged constitutional violations.

Plaintiff seeks an award of compensatory and punitive damages, attorney's fees and costs as well as declaratory relief and an injunction against future violations.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th

Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

### A.   Ms. Lutz's Motion for Summary Judgment

Ms. Lutz moves for judgment on all counts.

Ms. Lutz admits that she struck Johnstin Daniels on the head in order to get his attention and to restore order in the classroom.  Thus, that she struck him is undisputed.  It if further undisputed that she did not set out to strike him in the eye, but rather that, Johnstin happened to lift or turn his head as Ms. Lutz was striking him, thus causing the contact and resulting injury to the eye.

It is undisputed that Ms. Lutz was not authorized by Lakewood to use corporal punishment. This fact, however, is not necessarily material to the resolution of all of her claims. For example, the fact that Ms. Lutz may not have acted in conformity with the state statute outlining the circumstances in which corporal punishment may be used does not mean that her conduct necessarily violated Johnstin's constitutional rights. The background is arguably relevant, however, to determine the reasonableness of her conduct, a key to assessing whether Ms. Lutz is entitled to benefit from a common law privilege afforded teachers with regard to matters of discipline.

Arkansas law requires schools to have a written student discipline policy. Those districts that authorize the use of corporal punishment are required to include policy provisions that "it be administered only for cause, be reasonable, follow warnings that the misbehavior will not be tolerated, and be administered by a teacher or a school administrator and only in the presence of a school administrator or his designee, who shall be a teacher or administrator employed by the school district." Ark. Code Ann. § 6-18-503(b)(1). The NLRSD has elected not to permit corporal punishment. Its Rule No. 4.39 states, "The North Little Rock School Board prohibits the use of corporal punishment by any employee of the District against any student." Arkansas' School Discipline Act permits teachers in those districts permitting corporal punishment to carry out such punishment and protects them from civil liability as long as they administer such punishment in accordance with the school's written policy. Ark. Code Ann. § 6-18-505. Here, Ms. Lutz was not authorized to use corporal punishment and even if the NLRSD had permitted it, it would not have been carried out in conformity with the minimum statutory guidelines. Neither Defendant argues explicitly that Ms. Lutz is entitled to statutory immunity. Her lack of compliance with her district's policy is a factor that weighs against a finding that the discipline in

question was reasonable.

The Court will first address the Plaintiff's constitutional claims and then turn to her state law tort claims.

### (1) Constitutional claims

In 1988, the Eighth Circuit applied the following four-factor test to a substantive due process claim in the context of disciplinary corporal punishment: "(1) the need for the application of corporal punishment; (2) the relationship between the need and the amount of punishment administered; (3) the extent of injury inflicted; and (4) whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm." *Wise v. Pea Ridge School Dist.*, 855 F.2d 560, 564 (8th Cir. 1988). Applying this test, the court affirmed Judge Franklin Waters' ruling that a Coach's paddling which left the student's buttocks reddened and slightly bruised did not rise to the level of a due process violation as a matter of law. The *Wise* court further stated:

> [s]omething more is required to find a violation of the student's substantive due process rights. Minor discomfort and hurt feelings do not make a federal case. The conduct must be shocking to the conscience and amount to a severe invasion of the student's personal security and autonomy.

*Id.*, at 565.

In *Golden v. Anders*, 324 F.3d 650 (8th Cir. 2003), the Eight Circuit found no substantive due process violation where the principal forcefully restrained a sixth grade student who was violently kicking a school vending machine. *Id.* at 651. The plaintiff had refused to obey another teacher's order to stop before the principal's arrival. When the principal arrived, he threw the plaintiff on a bench and held him down by his neck and collar. The plaintiff struggled to breathe and felt a pain in his neck. According to one student, the principal appeared angry and "not businesslike" in his demeanor. *Id.* at 652. The principal told the plaintiff that he "was close

- 8 -

to knockin' [his] head off." *Id.* The plaintiff was subsequently taken to the emergency room by his mother where he received a steroid shot to relieve his swollen neck. The plaintiff also suffered from a pulled nerve in his shoulder and had to wear a neck brace for two weeks. The Court found that the plaintiff's injury fell "well short of those sustained by students whose substantive due-process claims have withstood summary judgment." *Id.* at 655; *see also London v. Directors of the DeWitt Pub. Schs.,* 194 F.3d 873 (8th Cir.1999)(defendant's use of force was not excessive where he dragged a student along a cafeteria floor for fifteen feet before slamming the student's head against a metal pole after the student would not obey the defendant's order to leave and because the student fought back).

Based on Supreme Court precedent rejecting the notion that a single standard governs all § 1983 excessive-force claims, the *Golden* court questioned whether the *Wise* four factor analysis was appropriate for analyzing a corporal punishment claim or an excessive force claim involving a government official forced to take action in a matter of moments. *Golden*, 324 F.3d at 653. Particularly for school officials placed in the position of making an "'instant judgment'" the *Golden* court suggests an alternative test, requiring a finding that the state actor have acted in such a way that "shocks the conscience." *Id*. (*citing County of Sacremento v. Lewis*, 523 U.S. 833, 850 (1998)). In the context of a school official forced to make an instant judgment, the *Golden* court held that a school official's conduct may not be considered "conscience-shocking unless he maliciously and sadistically" injures a student. *Id.*, at 654. The court further noted the firmly established precedent that "'we give school administrators substantial deference in matters such as school discipline and maintaining order." *Id*. (citation omitted).

In view of the Eighth Circuit precedent, the Court concludes that Ms. Lutz's conduct cannot be considered conscious-shocking, malicious, or sadistical. It is undisputed that Ms. Lutz

was attempting to quiet an unruly classroom when this incident occurred. The circumstances precluded "the luxury of calm and reflective deliberation" and rather, required immediate assessment and action to restore order. *Id*. While it may be possible to conclude, after-the-fact, that Ms. Lutz acted inappropriately, the Court is obligated to defer to her judgment as a school teacher and to view her actions in context.

The record shows that Ms. Lutz believed that Johnstin was out of his seat when she returned to the classroom. Johnstin denies that and instead states that he was leaning over to retrieve something from under his desk. It is undisputed that Johnstin was not seated upright in his desk when the incident occurred. Even assuming that Ms. Lutz mistakenly assessed the situation and that she acted inappropriately in striking Johnstin on the head with a folder, and possibly, a book, there is no evidence that her intent was to harm him personally, but rather, only to restore order to a chaotic classroom. Nor could any reasonable jury find that she acted sadistically or maliciously.

The facts in this case simply do not rise to the level of other cases in which a student's substantive due process claim has withstood summary judgment.[5]

Johnstin himself testified that he did not believe that Ms. Lutz held a "grudge" against him, or that she deliberately tried to scratch his eye. The Court also concludes that Ms. Lutz's failed attempt to get Johnstin to remain after class by touching him and stepping in front of him

---

[5] *See Golden, supra*, 324 F.3d at 655 (*citing Garcia by Garcia v. Miera*, 817 F.2d 650, 658 (10th Cir. 1987)(denying summary judgment to principal who paddled nine-year old and left deep bruises, bleeding and permanent scarring); *Hall v. Tawney*, 621 F.2d 607, 614-15 (4th Cir. 1980)(reversing dismissal of claim brought by student who spent ten days in emergency room with tissue damage from spanking with rubber paddle)). *See also Jones v. Witinski*, 931 F.Supp. at 373 ("We measure [the teacher's] conduct not by the unintended consequences, but by the act which set this chain of events in motion.").

does not rise to the threshold required for a due process violation.[6] It is unfortunate that Ms. Lutz caused harm to Johnstin's eye. On this record, no reasonable finder of fact could conclude that Ms. Lutz's conduct shocks the conscience.

Plaintiff's procedural due process and equal protection claims are also problematic. In *Ingraham v. Wright*, 430 U.S. 651 (1977), the Supreme Court rejected procedural due process protections in the context of corporal punishment in a school setting. The Court held:

> "At some point the benefit of an additional safeguard to the individual affected . . . and to society in terms of increased assurance that the action is just, may be outweighed by the cost." *Mathews v. Eldridge*, 424 U.S., at 348, 96 S.Ct., at 909. We think that point has been reached in this case. In view of the low incidence of abuse, the openness of our schools, and the common-law safeguards that already exist, the risk of error that may result in violation of a schoolchild's substantive rights can only be regarded as minimal. Imposing additional administrative safeguards as a constitutional requirement might reduce that risk marginally, but would also entail a significant intrusion into an area of primary educational responsibility. We conclude that the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools, as that practice is authorized and limited by the common law.

*Ingraham*, 430 U.S. at 682; *See also Wise v. Pea Ridge*, 855 F.2d at 566, fn.3 (recognizing *Ingraham* holding regarding corporal punishment and the absence of procedural due process requirements).

Plaintiff does not specifically address the Supreme Court's explicit rejection of procedural due process protections in *Ingraham*. Instead, Plaintiff contends that because the Lakewood Middle School policies provided for a scheme of progressive discipline, that Ms. Lutz's breach of the progressive discipline policy breached Johnstin's procedural due process rights. After considering the issue, the Court finds no sufficient basis upon which to distinguish

---

[6] *See also Jones v. Witinski*, 931 F.Supp. 364, 371 (M.D. Pa. 1996)(holding no violation of due process when student sustained serious injury as a result of his fall after the teacher grabbed his arm and pulled him; noting that while the injury was extremely unfortunate, the injury did not alter the character of the teacher's acts and it appeared from all the evidence that the teacher never intended to harm the student or cause him to fall).

- 11 -

this case from the Supreme Court's holding in *Ingraham.* Accordingly, Plaintiff's procedural due process claim must be dismissed.

With regard to Plaintiff's equal protection claim, the Eighth Circuit has held that a plaintiff does not have a viable equal protection claim absent a threshold showing that the plaintiff is similarly situated to those who allegedly received favorable treatment. *Klinger v. Dept. of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). Summary judgment on an equal protection claim is appropriate when a plaintiff fails to offer specific evidence of incidents in which they were treated differently than others who were similarly situated. *See Fales v. Garst*, 235 F.3d 1122, 1123 (8th Cir. 2001).

Plaintiff's theory is that the Plaintiff was singled out for physical punishment while the rest of the class was only threatened with being "written up." While it appears that Johnstin was treated differently, nevertheless in the absence of any specific evidence that the other students were acting similarly, an equal protection claim fails. "Dissimilar treatment of dissimilarly situated individuals does not violate equal protection." *Klinger*, 31 F.3d at 731. *Albright v. Oliver,* 975 F.2d 343, 348 (7th Cir.1992) (Posner, J.), *aff'd,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (to state equal protection claim, although plaintiff can be a member of a class with only one member, he must be singled out because of his membership in the class and not be just the random victim of governmental incompetence).

### (2) Tort claims

#### (a) Battery

The Court rejects Defendant's contention that Ms. Lutz is immune from battery based on the principle that "corporal punishment which is reasonable in degree administered by a teacher to a pupil as a disciplinary measure is 'privileged,' and does not give rise to a cause of action for

damages against the teacher." (Defendant Lutz's brief, Doc. No. 21, at p. 16, citing *LaFrentz v. Gallagher*, 462 P.2d 804 (Ariz. 1969)(citing Restatement of the Law 2d, Torts §§ 147(2), 150)).[7]

Although the parties have not addressed the issue, the Court questions whether the common law privilege may have been subsumed by the statutory privilege outlining the circumstances in which a teacher may use corporal punishment. *See* Ark. Code Ann. § 6-18-503(b)(1). If so, it might be determined as a matter of law that Ms. Lutz is not entitled to the benefit of any such privilege.

Assuming that the common law privilege continues to be recognized, the Court cannot conclude as a matter of law that Ms. Lutz acted reasonably. Other factual issues that might affect the availability of the common law privilege include whether Johnstin sustained a permanent injury and Ms. Lutz's intent, either of which arguably might void the qualified privilege. *See Hinson v. Holt*, 776 So.2d 804, 810-11 (Ala. Civ. App. 1998).

If Defendants intend to rely on a privilege of this nature at trial, they shall include in their trial brief a full discussion of the legal authority for its use, the parameters of the privilege, and whether it has been subsumed by the Arkansas statutory privilege. Plaintiff may respond, if she chooses, within five days thereafter.

### (b)  **Tort of Outrage**

To prevail on an outrage claim, a plaintiff must show that:

(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in

---

[7] *See also Berry v. Arnold School Dist.*, 199 Ark. 1118, 137 S.W.2d 256, 259 (1940)("A teacher has the right to inflict reasonable corporal punishment upon a pupil for insubordination, disobedience, or other misconduct, but he has no right to inflict punishment to enforce an unreasonable rule, and the punishment must not be inflicted with such force or in such manner as to cause it to be cruel or excessive.").

- 13 -

a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*McQuay v. Guntharp*,  331 Ark. 466, 470, 963 S.W.2d 583, 585 (Ark.,1998).  Whether conduct rises to the required extreme level must be determined on a case-by-case basis.

The facts in this case are not sufficiently extreme and outrageous so as to permit an outrage claim to be submitted to the jury.

### (c)     False imprisonment

False imprisonment has been defined as the unlawful violation of the personal liberty of another, consisting of *detention* without sufficient legal authority. *Headrick v. Wal-Mart Stores, Inc.,* 293 Ark. 433, 738 S.W.2d 418 (1987).  According to both Johnstin and his friend who witnessed the incident, Ms. Lutz's actions failed to cause any detention.  They both testified that although Ms. Lutz attempted to hold him to get him to stay in the classroom, he "spinned" off her.  It was the last period of the day.  Johnstin had a bus to catch; he caught it and arrived at home as usual.  Because it is undisputed that Johnstin was not detained, his false imprisonment claim will be dismissed.

### (B)    NLRSD's Motion for Summary Judgment

Plaintiff seeks to hold NLRSD liable solely for the state law tort violations of Separate Defendant Deborah Lutz and not for any federal civil rights violations.  The school district also correctly contends that it is immune from liability for her negligence acts by virtue of Ark. Code Ann. § 21-9-301.[8]  It does not appear, however, that Plaintiff is seeking to hold Ms. Lutz liable for anything other than intentional torts.  Therefore, NLRSD's argument on this point is moot.

---

[8] The statute "does not provide immunity for the intentional acts of [political subdivisions] or their employees." *Deitsch v. Tillery*, 309 Ark. 401,  407, 833 S.W.2d 760, 762 (1992).

With regard to Ms. Lutz's intentional tortious acts, the NLRSD contends that such acts were outside the scope of her employment, and thus, that it may not be held responsible for such acts. This presents a close question.

NLRSD's reliance on *Miller v. Ensco, Inc.*, 286 Ark. 458, 692 S.W.2d 615 (1985) for the proposition that "intentional torts involve consequences which the actor believes are substantially certain to follow his actions" is misplaced. (Quoting from p. 3 of Def.'s Reply Brief, Doc. 33). The issue in the *Miller* case was whether the employer committed an "intentional tort" such that the injured employee could escape the exclusivity provision of Arkansas Workers' Compensation Act. In that context, Arkansas courts require that the employer actually intend to cause harm or desire the consequences of its act.

Likewise, NLRD's reliance on *Gordon v. Planters & Merchants Bancshares, Inc.*, 326 Ark. 1046, 1063, 935 S.W.2d 544, 554 (Ark. 1996) to support its contention that "Arkansas has held that an intentional tort is one committed with the intent or the purpose of causing harm" is downright misleading. (Quoting from p. 3 of Def.'s Reply Brief, Doc. 33). In addition to being a citation to a dissenting opinion authored by a lone special justice, the *Gordon* case concerns the issue of punitive damages. In that context, it is a requirement that the tortfeasor intend harm or know that harm will likely occur. *See* AMI 2218. The case has no bearing whatsoever on whether NLRSD may be liable for its employee's battery of a student.

To prevail on her battery claim, the Plaintiff need not prove that Ms. Lutz intended to cause harm, but rather only that she intended to cause "some harmful or offensive contact" or that she "acted with the intent to create the apprehension of some harmful or offensive contact" and that "a harmful or offensive contact" resulted. *See* AMI 418.

Under the doctrine of *respondeat superior,* an employer may be held vicariously liable for

the tortious conduct of an employee if the evidence shows that such conduct was committed while the employee was acting within the scope of employment. *See St. Joseph's Reg'l Med. Ctr. v. Munos,* 326 Ark. 605, 612, 934 S.W.2d 192 (1996).

Defendant NLRSD relies upon *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997) in support of its argument. In *Porter*, an ultrasound technician molested a patient undergoing an ultrasound examination. The Arkansas Supreme Court rejected vicarious liability on the part of the physician/employer, holding:

> Rather than analyze the present case under one of the aforementioned theories from other jurisdictions, we think that the better course is to adhere to the theory of master-servant liability that we have followed since 1910. *See Sweeden v. Atkinson Imp. Co.,* 93 Ark. 397, 125 S.W. 439 (1910)(an act of an employee, in order to render the employer liable, must pertain to something that is incident to the employee's duties and which it is his duty to perform or for the benefit of the employer). Our test was further explained in *Life & Cas. Ins. Co. of Tenn. v. Padgett,* 241 Ark. 353, 355, 407 S.W.2d 728 (1966): We think the law as it stands today is fairly summarized in the Restatement of Torts, where it is said that the master is subject to liability for his servant's intentional tort "if the act was not unexpectable in view of the duties of the servant." Restatement, Torts (2d), 245 (1958).
>
> More recently, we reviewed our test, commonly referred to as the respondeat superior doctrine, in *Gordon v. Planters & Merchants Bancshares,* 326 Ark. 1046, 935 S.W.2d 544 (1996). There, we said that an employer may be held liable for punitive damages for the acts of his employee if the employee was acting within the scope of his or her employment at the time of the incident. *Id.; J.B. Hunt Transp., Inc. v. Doss,* 320 Ark. 660, 899 S.W.2d 464 (1995). Whether the employee's action is within the scope of the employment depends on whether the individual is carrying out the "object and purpose of the enterprise," as opposed to acting exclusively in his own interest. *Id.*
>
> Applying these principles to the facts before us, we must agree with the trial court that Pearrow's sexual assault of Porter was unexpectable. Pearrow was not, by any stretch of the imagination, acting within the scope of his duties as a radiology technician when he assaulted Porter. Rather, Pearrow's actions were purely personal. Because Pearrow's actions were not expectable in view of his duties as a radiology technician, we conclude that Dr. Harshfield may not be held liable for Pearrow's actions and was thus entitled to summary judgment as a matter of law. *See Life & Cas. Ins. Co. of Tenn. v. Padgett,* 241 Ark. 353, 407 S.W.2d 728 (1966).

*Porter*, 329 Ark. at 136-37, 948 S.W.2d at 86.

The NLRSD contends that Ms. Lutz's intentional torts, assuming they were committed, were outside the scope of her teaching duties and therefore, that vicarious liability for her actions may not be imposed upon it.

This is a much closer case than the *Porter* case. Part of a teacher's job responsibility is to maintain control over the classroom and, when necessary, to impose discipline in order to achieve it. Unlike the *Porter* case, Ms. Lutz's actions may not be viewed as strictly personal and for her own gratification independently of her employer's interests and requirements. Nor can it be said that Ms. Lutz's act of striking a child in attempting to contain an unruly class room was unexpectable in view of her duties.

An Arkansas court has held that for employee's battery to be within the scope of employment such that the employer may be held vicariously liable, the conduct must: "(1) be of the kind the employee is employed to perform; (2) occur substantially within the authorized time and space limits; and (3) be actuated, at least in part, by a purpose to serve the master." *Regions Bank & Trust, N.A., v. Stone County Skilled Nursing Facility*, 73 Ark. App. 17, 21, 38 S.W.3d 916, 919 (Ark. App. 2001). Plaintiff's conduct arguably meets these three requirements.

NLRSD further argues that because it had in place an express policy prohibiting its teachers from using corporal punishment that it should not be held responsible for its employees actions. NLRSD attempts to distinguish *Razorback Cab v. Lingo*, 304 Ark. 323, 802 S.W.2d 444 (1991), upon which Plaintiff relies, by pointing out this circumstance. The Court, however, declines to conclude that the policy difference is outcome determinative. In *Razorback Cab*, the owner of the cab company argued, unsuccessfully, that it should not be held liable under the theory of respondeat superior for the actions of its employee, the cab driver, who got into a fist-fight with the plaintiff in a dispute over the fare. There was evidence that the plaintiff had been

unruly and disturbed the other passengers in the cab when he insisted on smoking. The court, rejecting the taxicab company's argument that it should not be held responsible for the assault committed by its driver, noted:

> The underlying purpose in this case, at least in part, was the comfort and welfare of other passengers, a purpose entirely consistent with the interest of Razorback, even though the means employed in furthering such interests were misguided.

*Id.*, 304 Ark. at 326-37.

While this is NLRSD's strongest argument, the Court declines at this point to hold as a matter of law that its policy prohibiting corporal punishment insulates it from civil liability for the intentional torts of its employee in striking and injuring a student. This case appears consistent with the *Razorback Cab* case. It is doubtful that Razorback Cab condoned its cabbies getting into fistfights with customers. The test for imposing vicarious liability upon employers turns "on whether the subject individual is carrying out the object and purpose of the enterprise, as opposed to acting exclusively in its own interest." *Id.*, 304 Ark. at 327.

The Court predicts that the Arkansas Supreme Court, if called upon to decide this issue, would decline to rule as a matter of law that the Separate Defendant NLRSD is entitled to judgment as a matter of law. The Court may revisit this issue at trial and the parties are encouraged to provide additional briefing on this issue in their trial briefs, if they so desire.

## CONCLUSION

For the reasons stated herein,

IT IS HEREBY ORDERED THAT Defendant LRSD's Motion for Summary Judgment (Docket No. 16) and Defendant Deborah Lutz's Motion for Summary Judgment (Docket No. 20) be, and they are hereby, GRANTED IN PART and DENIED IN PART. Plaintiff's constitutional claims, her outrage claim, and her false imprisonment claims are hereby dismissed as a matter of

law.  Plaintiff may proceed to trial against both Defendants on her battery claim.

     IT IS FURTHER ORDERED THAT the parties are hereby directed to file trial briefs addressing the remaining legal issues and any other anticipated legal or evidentiary issues by Thursday, January 5, 2006, by 2:00 p.m.  Reply briefs, if desired, may be submitted by Wednesday, January 11, 2006 by 5:00 p.m.

     IT IS SO ORDERED this  27th  day of December, 2005.

                                        /s/Garnett Thomas Eisele
                                    UNITED STATES DISTRICT COURT